UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DAVID RAMOS, ) | |
| ) | |
| Plaintiff, ) | Case No. EDCV07-00849 AJW |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In a September 9, 2008 written hearing decision that constitutes the Commissioner's final decision in this case, an administrative law judge (the "ALJ") found that plaintiff had severe impairments

consisting of inflammatory, probably psoriatic, arthritis[1], level III obesity, lumbar spine disorder, cervical spine disorder, and hypertension. [Administrative Record ("AR") 197]. The ALJ found that plaintiff retained the residual functional capacity ("RFC") for a restricted range of light work. [AR 199]. The ALJ concluded that plaintiff was not disabled because his RFC did not preclude him from performing work available in significant numbers in the national economy. [AR 201-202].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

### Obesity

Plaintiff contends that the ALJ did not properly analyze, or make findings with respect to, the effects of plaintiff's obesity. [JS 3-10].

Plaintiff was 24 years old when the ALJ issued his decision. [See AR 52]. He is five feet, seven inches tall, and his weight as reported in the record ranged from 220 pounds to 262 pounds. [AR 55, 415, 437, 441, 449, 452].

---

[1] Psoriatic arthritis is a chronic disease characterized by inflammation of the skin and joints. [See JS 3 (quoting http:/www.medicinenet.com/psoriatic_arthritis/article.htm)]. More specifically, psoriatic arthritis is "the concurrence of psoriasis and polyarthritis, resembling rheumatoid arthritis but thought to be a specific disease entity, seronegative for rheumatoid factor and often involving the digits." Stedman's Medical Dictionary psoriatic arthritis (27th ed. 2000).

Contrary to plaintiff's contention that the ALJ did not consider plaintiff's obesity at step two of the sequential evaluation procedure [JS 5], the ALJ found that plaintiff's obesity was a severe impairment. [AR 197]. The ALJ considered the combined effect of plaintiff's obesity and his other severe impairments on his ability to work. [See AR 197-201].

Plaintiff relies on Social Security Ruling 02-01, which states that "[w]hen establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as height and weight." [JS 2]. Plaintiff also argues that "[o]besity can cause limitation of function." [JS 6]. What plaintiff has not done is point to *any* evidence in the record suggesting that plaintiff's obesity caused a limitation in function greater than that comprehended by the ALJ's RFC finding.

The ALJ concluded that there was "no dispute among the treating, examining, and reviewing medical sources regarding the basic severity of [plaintiff's] combination of physical impairments." [AR 197]. Plaintiff's "combination of physical impairments," of course, included his severe obesity. For example, Dr. Jamil, one of the two consultative internists who examined plaintiff at the Commissioner's request, opined in February 2005 that plaintiff could perform a restricted range of light work despite "moderate obesity." [AR 146]. The second consultative internist, Dr. Lin, also noted "obesity" as a diagnosis, but he concluded that plaintiff's impairments did not preclude him from performing light work. [AR 418]. Treatment reports from Kaiser Permanente do not suggest that plaintiff's obesity or other impairments warranted a more restrictive functional capacity than that found by the ALJ. Plaintiff reported symptoms of joint pain, stiffness, and tenderness of varying intensity—sometimes mild, sometimes severe—related to his diagnosis of psoriatic arthritis. At times he exhibited swelling and limited range of spinal motion, but at other times those findings were normal. Plaintiff's joint symptoms were consistently described as responding well to Remicade[2] infusions every six to eight weeks and other prescribed

---

[2] Remicade is a biologic treatment used to treat inflammatory disorders involving the immune system. Remicade "targets specific proteins in the body's immune system to help control the development of inflammation, significantly reducing painful symptoms in diseases such as plaque psoriasis, rheumatoid arthritis, psoriatic arthritis, adult Crohn's disease, pediatric Crohn's disease, ulcerative colitis, and ankylosing spondylitis." See "Understanding Remicade" at http://www.remicade.com/remicade/global/understanding/understanding.html (last visited Feb. 25, 2010).

1  medication. Stretching exercises also helped his stiffness. Plaintiff's treating physicians at Kaiser did not document particular concerns about plaintiff's obesity, nor do their treatment notes reflect that he was medically advised to lose weight. [See AR 354-393, 429-464].

There is no evidence of obesity-related functional limitations that were overlooked by the ALJ. The mere fact that plaintiff was obese or was diagnosed with obesity, without more, says little or nothing about the functionally limiting effects of that condition. See Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed emotional disorder "is not per se disabling," and stating that "there must be proof of the impairment's disabling severity"); Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (stating that a claimant "must show more than the mere presence of a condition or ailment" at step two) (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

Plaintiff's reliance on Celaya v. Halter, 332 F.3d 1177 (2003) is misplaced. There, the Ninth Circuit held that the ALJ "had a responsibility to consider [the] interactive effect" of the claimant's obesity "upon her other impairments, and its effect on her ability to work and general health," even though her obesity, standing alone, was not severe. Celaya, 332 F.2d at 1182. The Ninth Circuit explained that the ALJ should have included obesity in a "multiple impairment analysis" for three reasons. First,

> First, [obesity] was raised implicitly in [the claimant's] report of symptoms. Second, it was clear from the record that [her] obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses. Third, in light of [the claimant's] pro se status, the ALJ's observation of [the claimant] and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

Celaya, 332 F.3d at 1183.

Celaya is distinguishable. First, the ALJ did not ignore plaintiff's obesity; rather, he found that it was a severe impairment and considered its effects. Second, even at his heaviest, plaintiff's weight did not meet or equal the former obesity listing level (which called for a weight of 294 pounds for a 5'7" tall man). See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1998). Third, in Celaya, the ALJ found that the claimant had independently severe diabetes and hypertension, both serious conditions whose association with obesity is well-recognized. See SSR 00-3p, 2000 WL 33952015, at *3 (stating that obesity increases the risk of developing diabetes and hypertension). In this case, however, plaintiff's joint problems were associated with

4

psoriatic arthritis, without evidence in the record of a cause-and-effect relationship to obesity. Finally, plaintiff was represented by counsel during the administrative hearing, while the plaintiff in Celaya was not.

For all of these reasons, the ALJ did not commit legal error in his evaluation of plaintiff's obesity and its functional effects. See Burch, 400 F.3d at 684 (holding that the ALJ "adequately considered [the claimant's] obesity in his RFC determination" where the claimant "has not set forth, and there is no evidence in the record, of any functional limitations as a result of h[is] obesity that the ALJ failed to consider"). **Credibility finding**

Plaintiff contends that the ALJ did not discuss plaintiff's hearing testimony and erred by failing to provide any reasons for rejecting plaintiff's testimony about his subjective symptoms and limitations. [JS 11-17].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ discussed plaintiff's subjective complaints, including his hearing testimony, and articulated

5

specific, clear, and convincing reasons based on substantial evidence for rejecting them. Plaintiff testified that he experienced side effects from his medications, including drowsiness, grogginess, and "stomach issues," in particular "loose stools." [AR 486]. The ALJ noted that plaintiff was not drowsy, groggy, or unable to concentrate during the hearing, and that he answered questions appropriately and without delay. [AR 200]. See Verduzco v. Apfel, 188 F.3d 1087, 1088 (9th Cir. 1999)(holding that the inclusion of the ALJ's personal observations did not render the decision improper, and that the ALJ permissibly remarked upon discrepancies between what he observed during the hearing and plaintiff's reported symptoms). The ALJ pointed out that plaintiff testified that he complained about medication side effects to his treating physicians at Kaiser Permanente [AR 200, 294], but that his doctors' notes do not reflect those complaints or concerns about side effects from his medications. [See AR 163-177, 352-407, 429-474]. The ALJ also permissibly discounted plaintiff's complaints of side effects affecting his mental functioning because plaintiff's treating doctors did not indicate that he had any significant mental functional restrictions, and because plaintiff exhibited only mild abnormalities during consultative psychiatric examinations in 2005 and 2007. [AR 149-154, 200, 324-331]. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.")

Regarding plaintiff's subjective testimony of generalized joint pain, lower back pain, and back spasms [AR 485-486], the ALJ noted that the objective evidence, treatment reports, and consultative internal medicine reports did not corroborate a disabling level of pain or symptoms. Furthermore, both consultative examiners opined that plaintiff was not disabled, and there was no treating source opinion. [See AR 142-148, 200, 413-428]. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (holding that the ALJ properly rejected the claimant's pain testimony based, in part, on an examining physician's opinion that the claimant was not disabled).

The ALJ also discounted plaintiff's overall credibility because there were inconsistencies between his hearing testimony about the severity of his condition and statements he made to his doctors, and because plaintiff made inconsistent statements about his education. See Tonapetyan, 242 F.3d at 1148 (stating that the ALJ can use "ordinary techniques of credibility evaluation" and may rely on inconsistent statements in testimony)(citing Fair, 885 F.2d at 604 n.5); Matthews v. Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993)

1 (holding that the ALJ properly considered the claimant's inconsistent statements as part of his credibility analysis).

The ALJ provided legally sufficient reasons, based on substantial evidence in the record, to support his negative credibility evaluation.

**Lay witness testimony**

Plaintiff contends that the ALJ erred in rejecting a third party function report completed by plaintiff's mother, Ms. Rubio, that was consistent with plaintiff's own subjective testimony and complaints. [JS 17-23; see AR 74-82, 303-309].

The ALJ considered the statements made by Ms. Rubio in her January 2005 report. [AR 201]. He noted that Ms. Rubio said that plaintiff had problems staying awake, needed help to put his socks on, and could not sit or stand for long periods, but also that he could vacuum, clean, do some laundry, water plants, and occasionally shop. [AR 201]. She also said that plaintiff watched television, read, wrote, listened to music, played video games, and talked on the phone. [AR 78]. The ALJ did not specifically comment on a later report completed by Ms. Rubio in February 2007 describing activities and limitations similar to those in her earlier report. [See AR 303-309].

While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)). Germane reasons for rejecting a lay witness's testimony include inconsistencies between that testimony and the medical evidence, inconsistencies between that testimony and the claimant's presentation to treating physicians during the period at issue, and the claimant's failure to participate in prescribed treatment. See Greger, 464 F.3d at 971; Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ permissibly discounted Ms. Rubio's statements about plaintiff's symptoms. The ALJ remarked that plaintiff's contemporaneous treating source reports did not reflect complaints about, or observations of, the severe symptoms described by plaintiff's mother. The ALJ permissibly inferred that if plaintiff had such severe symptoms, their presence would have been documented in plaintiff's treatment reports. In addition, the ALJ noted that the objective medical findings and other medical evidence failed

to corroborate the alleged severity of the symptoms and limitations Ms. Rubio described.

The ALJ also disbelieved Ms. Rubio because she supported plaintiff and therefore had an "obvious financial and personal motivation" to help him win benefits. [AR 201]. Standing alone, a claimant's financial motivation for obtaining benefits is not a valid reason for discrediting the testimony of the claimant or family members. See Ratto v. Sec'y, Dept. of Health & Human Servs., 839 F.Supp. 1415, 1428-1429 (D. Or. 1993) ("By definition, every claimant who applies for [disability] benefits does so with the knowledge--and intent--of pecuniary gain. That is the very purpose of applying for [disability] benefits. . . . . If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible."). On the other hand, an ALJ is not required to ignore evidence suggesting that a claimant is seeking benefits for financial reasons independent of any allegedly disabling impairment. See Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996) (holding that there was a "strong element of secondary gain in this case" justifying the ALJ's negative credibility finding where the claimant sued his employer only after private benefits terminated, said he planned to work only until his lawsuit settled, and told a doctor he could get a minimum wage job at any time).

Plaintiff has never worked, and he lived with his mother without paying rent. As Ms. Rubio noted, plaintiff had no income and no money. [AR 67, 74, 77, 306, 480]. In a disability report, plaintiff said that his parents paid for his Kaiser Permanente healthcare coverage after he was initially denied SSI benefits and was not automatically eligible for medicare. [AR 96]. Standing alone, those would not be sufficient reasons for rejecting Ms. Rubio's statements. However, the ALJ articulated other germane reasons for rejecting Ms. Rubio's portrayal of the severity of plaintiff's symptoms and functional restrictions. The record as a whole supports the ALJ's evaluation of the alleged severity of plaintiff's subjective symptoms.

**Side effects from medications**

Plaintiff argues that the ALJ improperly disregarded plaintiff's statements that he suffers the side effects of stomach pain, grogginess, and drowsiness from medications. [See JS 23-27].

In evaluating a claimant's subjective symptoms, the ALJ must consider, among other things, the type, dosage, effectiveness, and adverse side effects of any pain medication. See 20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3. As explained above, the ALJ's credibility analysis was legally sufficient, including his evaluation of plaintiff's reported medication side effects. Accordingly, there is no merit to plaintiff's redundant argument that the ALJ improperly rejected plaintiff's complaints of adverse effects from his medications.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

February 28, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge